Anna Seiffe, Defendant in Error, v. Caryl Seiffe, Plaintiff in Error.

Gen. No. 35,383.

Opinion filed June 15, 1932.

JOHN A. BLOOMINGSTON, for plaintiff in error.

JOSEPH D. RYAN and LOUIS P. MILLER, for defendant in error.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an action in trespass on the case for personal injuries, which was instituted by the plaintiff against the defendant, and comes to this court upon a writ of error. There was a trial before the court and a jury, and after a hearing, the jury returned a verdict in the sum of $35,000 against the defendant. The plaintiff entered a remittitur, and thereupon the court overruled a motion for a new trial and entered judgment for $25,000.

· The declaration consists of three counts. The first count alleges general negligence of the defendant in the operation of the automobile, and the second count that by reason of the wilful and wanton conduct of the defendant in the operation of the car, the plaintiff was injured, and the third count, the operation of an automobile at a high, dangerous and excessive rate of speed.

To this declaration the defendants filed a plea of the general issue and, in addition, a plea of non-operation and control. No question is raised as to the state of the pleadings. All of the defendants named in the declaration were dismissed by the plaintiff except the defendant Caryl Seiffe.

In discussing the objection of the defendant that the verdict was contrary to the evidence, we will also consider in this connection the point made that the preponderance of the evidence both as a matter of law and fact is in favor of the defendant.

There is evidence in the record that in August, 1929, the defendant Caryl Seiffe, with his wife, and the plaintiff Anna Seiffe and her husband Ralph Seiffe, left Kenmore, a suburb of Buffalo, New York, for a vacation trip to Canada in a Packard automobile, driven by the defendant, the ownership of which was in the defendant and his firm. The defendant was married just before the trip, and when the plaintiff learned

that it was a honeymoon trip she objected to going, but finally consented. The occupants of the car were Ralph Seiffe, the brother of the defendant, and his wife, the plaintiff, who were in the rear seat, and Caryl Seiffe and his wife, who were in the front seat. The party left Kenmore on Thursday, August 15, 1929, and traveled to Trenton, Ontario, where the night was spent; then they left the following morning and stopped and spent the night at Ottawa. They continued their journey on the afternoon of Saturday, August 17, 1929, to Montreal over the Provincial Highway, and after traveling on this highway for a distance of from 50 to 70 miles, between the towns of Laurival and Alfred, the accident, which is the subject of this suit, occurred.

The car that the defendant was driving was a sedan equipped with four-wheeled brakes, and had been purchased the preceding May. It had been driven approximately 2,600 miles prior to the accident. The roadway in question was a 21-foot macadam highway, and at the point where the accident occurred was a straight highway for a distance of five or six miles. It was a bright summer day, the sun was shining, the roadway was dry, and the traffic was light. On several occasions during the previous days of the trip both the plaintiff and her husband had remonstrated with the defendant concerning the speed at which he was driving the car, and the defendant at their request slowed down in speed. The conflict in the evidence is as to how the accident happened. The plaintiff's evidence tends to show that just before the accident occurred something was said to the defendant by the plaintiff to the effect that he "cut the speed" of the car. "You," meaning the defendant, "are driving like a crazy man," and in reply the defendant said that he was going 78 miles and wanted to show them 80. The plaintiff then asked the defendant to stop the car and let her out because she would not ride that fast,

but he did not do so. About this time a car was observed in the distance coming in their direction, and in a few seconds it passed the defendant's car, at which time the defendant's car left the pavement, ran over the dirt shoulder of the road for a distance of 135 feet into the culvert, which at that point extended over the ditch at a height of four feet, crashed the culvert, and landed a distance of about 40 feet from the culvert in the ditch, rolled over, and then came to a stop. There is evidence in the record that the approaching car did not at any time drive over onto defendant's half of the roadway, and that it did not collide or come in contact with or scrape any part of the defendant's car. This evidence is disputed by the defendant, and his testimony as to the occurrence is, in substance, as follows: That he was not driving the car fast; was not swaying or swerving; that he saw the approaching car turn over to his side of the road; that he put on the brakes and slowed the car's momentum; that when his car was half a block away from the approaching car it was still coming toward his side of the road; that the defendant then got onto the shoulder of the road and at that point the other car was coming right at him; that the wheels of defendant's car began to slide from the shoulder, and when the defendant was turning onto the hard pavement the other car struck his left front fender, which knocked the defendant's car back into the ditch and caused the rear wheels of his car to strike said culvert; that he had a choice between being struck by a head-on collision, or being thrown into the ditch, and that he chose the latter course; that thereafter when he again saw his car in Montreal he observed that the left front fender was dented and had yellow paint on it, the color of the car that passed at the time of the accident.

The question of whether the defendant was guilty as charged in the declaration was for the jury. The argument is made by the defendant that the facts do

not justify the verdict of the jury. It is the duty of the jury to determine whether the witnesses who appear and testify are interested in the outcome of the litigation, the credibility of their evidence and the reasonableness of the facts as testified to by them, and unless the verdict is against the manifest weight of the evidence, it is not our duty to disturb the verdict. The jury in this case had the advantage of observing the several witnesses, their candor or lack of it, and their demeanor on the witness stand. In other words, we do not have the advantage of having observed the conduct of the several parties in the court room; all we have before us in the consideration of these facts is the printed record. One of the reasons advanced why we should disturb this verdict is that there is not a scintilla of evidence that the speed of the car or whatever it was, had anything to do with the accident. While the jury had the facts and no doubt considered the distance the car was traveling when it swerved from the roadway onto the shoulder of the road into the culvert, and the distance the car landed from this culvert, which was testified to by the witness Arthur De Haitre, the high constable for the county, who, from the facts, did not have any interest in the outcome of the litigation, and from the verdict of the jury it would appear that they did not believe defendant's story that he was forced into the ditch by an oncoming car which collided and struck his fender; nor that said car was responsible for this accident. Then, too, the jury may have considered it strange that this car continued on its journey without any apparent damage, and especially when it is considered that the oncoming car and that of the defendant as testified to by him were moving at a speed of about 40 miles an hour. There is nothing in the record that would justify our interference with the verdict of the jury as being against the manifest weight of the evidence. The evidence offered by the plaintiff, fairly considered, preponderates in

favor of her case, and there is no good reason for this court to hold from this record that the preponderance of the evidence favors the defendant's side of the lawsuit.

The defendant contends that the general verdict, where there is a wanton and wilful count in the declaration, should be set aside because of the absence of proof of wanton and wilful conduct. It is well to have in mind what is wanton and wilful conduct. The Appellate Court in considering this question held that the rule is that evidence is not necessary to show that the defendant with malice aforethought and with premeditation brought about the injuries. Gross negligence may justify the presumption of wilfulness and wantonness when it is such as to imply a disregard of consequences. It need not be claimed, nor is the plaintiff required to prove that there was a particular intention to injure, but the evidence must show that there was such wilful or wanton recklessness as to authorize the presumption of a total disregard of the rights of others, and the question to be determined by the jury is whether the conduct of defendant amounts to wantonness and wilfulness. *Williams v. Kaplan,* 242 Ill. App. 166.

In the instant case there is evidence of speed, which the jury took into consideration, that just prior to the accident the defendant, by his own admission, stated that he was driving the car at a rate of 78 miles an hour, and that he wanted to make it 80 miles an hour, notwithstanding the objection of the plaintiff to the rate of speed, and as a result when an approaching automobile was seen coming from the opposite direction, the defendant, in trying to control the speed of his car, failed and the accident happened.

This court in considering the question, finds in the record that it was necessary for the plaintiff to object to the speed at which the defendant was driving on other occasions as well as on the occasion of the acci-

dent, which would seem to indicate the exercise of care by the plaintiff for her own safety, and fairly tends to prove want of care and a wilful disregard of consequences by the defendant in the operation of the automobile at the place of the accident. The jury having determined that the negligent conduct of the defendant amounted to wantonness, the evidence in the record is sufficient and meets the requirements as to proof and the law laid down in *Bremer v. Lake Erie & W. R. Co.,* 318 Ill. 11. The court in that case said:

"If there is any evidence in the record fairly tending to show such a gross want of care as indicates a willful disregard of consequences or a willingness to inflict injury, then it is a question to be determined by the jury whether the negligent conduct of the defendant amounted to wantonness or willfulness. (*Walldren Express Co. v. Krug,* 291 Ill. 472.) What degree of negligence the law considers equivalent to a willful or wanton act is as hard to define as negligence itself, and in the nature of things is so dependent upon the particular circumstances of each case as not to be susceptible of general statement. The gross negligence which will justify the presumption of willfulness or wantonness is such as to imply a disregard of consequences or a willingness to inflict injury. (*Lake Shore and Michigan Southern Railway Co. v. Bodemer, supra.*) An intentional disregard of a known duty necessary to the safety of the person, and an entire absence of care for the life, the person or the property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness such as charges the person whose duty it was to exercise care with the consequences of a willful injury. (1 Thompson on Negligence, secs. 20, 22.)"

It appears that the defendant complains of the ruling of the court as to the admission and rejection of certain testimony, and of the court's ruling in permitting plaintiff's counsel to interrogate the defendant as

to previous contradictory statements, on the ground that such questions tended to impeach and discredit the defendant, who was called as a witness by the plaintiff. The rule is that a party having called his adversary to the witness stand he cannot impeach the witness. The reply of the plaintiff to the defendant's contention is that in the examination of the defendant it was based upon the familiar ground that where a witness unexpectedly gives testimony against the party calling him, such party may specifically interrogate him concerning former contradictory statements, for the purpose of refreshing his memory or awakening his conscience. This witness was called as plaintiff's witness and his evidence was limited, as announced by the plaintiff's attorney, to the question of the ownership of the car and its use at the time of the accident. This evidence was made necessary by the pleas of the defendant denying the ownership, operation and use of the car. The defendant was asked his purpose in making the trip to Canada, to which he replied that he was on his honeymoon and that he had no other purpose. Plaintiff's attorney had in his possession at the time a statement furnished by the defendant, a portion of which is quoted in defendant's brief and which is diametrically opposed to the statement made by the witness when testifying, and plaintiff's counsel contends that by being taken by surprise to the unexpected answer, plaintiff was then justified in attempting to refresh the defendant's recollection, and as authority for his examination of the witness calls attention to the case of *People v. Michaels*, 335 Ill. 590. The court in that case said: ''The rule is, that when a witness unexpectedly gives testimony against the party calling him, such party has the right to examine him and by such examination show that the witness is giving unexpected testimony, and to specifically call the attention of the witness to former statements made by him for the purpose of refreshing his

memory or awakening his conscience and cause him to relent and speak the truth if he was lying."

The defendant also contends that prejudicial error was committed when testimony was introduced to the effect that on previous days of the trip the plaintiff and her husband objected to the speed at which the defendant was driving, and on such occasions he complied with their wishes and slowed down. It was necessary for the plaintiff to prove under the general negligence count that at and previous to the time of the accident, she was in the exercise of ordinary care for her own safety. The fact necessary to be established upon that question is that the plaintiff called the attention of the defendant to the speed at which he was driving the car, and that the plaintiff fully apprised the defendant of her desire to have him drive at a safe rate of speed. This evidence, therefore, was competent to establish her own care, and also to show wilful and wanton conduct on the part of the defendant and the speed at which he was driving the car, to which we have already referred in this opinion.

We have also considered the objection of the defendant to the evidence admitted by the court of several conversations between the parties and their plans for the trip. We regard this evidence competent to support the allegations in the plaintiff's declaration that she was an invited guest on this trip.

Complaint is made by the defendant that the court erred in permitting the witness Dr. Charles A. Burkholder to testify to a 50 per cent loss of vision of the plaintiff's left eye, and also in permitting an answer of Dr. A. C. Tenney to a hypothetical question. We have carefully considered this evidence and are fully convinced that the court did not err in its ruling. Dr. Burkholder's evidence is not such as to be prejudicial. He testified as an eye specialist to what he found upon an examination of the plaintiff. The plaintiff had testified that she was unable to distinguish objects on

the left side, and as far as we are able to determine from the record, the doctor's evidence added nothing to what is already in the record. The form of the hypothetical question is objected to by the defendant. The plaintiff contends that the objection made by the defendant does not point out the reasons for the objection except in one instance, and then the reason brought out was that the question invaded the province of the jury. The reasons should be stated by the objecting party so that the party asking the question may correct the same. The defendant having failed to do so in this respect it is now too late to urge this point. From an examination of this question that was answered by Dr. Tenney, it does not appear to have invaded the province of the jury, and is not such as would prejudice the defendant's case. There are objections that cross-examination of the defendant by plaintiff's counsel was an attempt to get matters before the jury which were not properly admissible. We have examined the questions called to our attention by the defendant and are unable to agree with defendant's contention, and are satisfied that the ruling of the trial court in this regard was proper.

It is also contended by the defendant that an instruction given for the plaintiff was erroneous in that the court failed to instruct that if wilful and wanton conduct did not proximately contribute to the plaintiff's injury then such conduct would not excuse the plaintiff from the exercise of due care. The paragraph of the instruction which is complained of is in these words:

"You are further instructed that if you believe from a preponderance of the evidence that the defendant was guilty of wilful and wanton conduct in the management and operation of said automobile, as alleged in said count, then contributory negligence on the part of the plaintiff—even if you should find from the evidence that she was guilty of contributory negligence—

is not a defense to this action and does not bar the plaintiff's right to recover in this case."

The given instruction offered by the plaintiff defines the issues alleged in the second count of the plaintiff's declaration, and then follows the paragraph above mentioned. One of the given instructions of the defendant instructs the jury as to the law on contributory negligence to this effect, that if the jury finds the plaintiff was not in the exercise of ordinary care they must find the defendant not guilty, "unless you find the defendant guilty as to the second count of the plaintiff's declaration." The defendant in effect, advised the jury that the rule of law is that if the defendant is guilty of the wilful and wanton acts charged in the second count of the declaration then the defendant's contributory negligence is not a defense.

This court agrees with the defendant's contention that if the wilful and wanton conduct did not contribute to the plaintiff's injury, then of course the question is not in the case. But the defendant by his instruction admits, in effect, as we have already indicated, that contributory negligence is not a defense if there is evidence of wanton and wilful conduct, as alleged in the second count of the declaration. The defendant by reference in his instruction to the second count of the declaration is not in a position to complain of the given instruction for the plaintiff. In the case of *Kelly v. Chicago City Ry. Co.*, 283 Ill. 640, the court in commenting upon a similar question said: "Defendant having recognized the negligence charged in the declaration as stating a good cause of action and by its own instruction referred the jury to such declaration for a statement of what the negligence constituting the cause of action in this case consists, cannot now be heard to complain of the instructions for appellee for doing the same thing. *Calumet Iron and Steel Co. v. Martin*, 115 Ill. 358; *Baltimore and Ohio*

*Southwestern Railway Co. v. Then, supra; Brennan v. City of Streator,* 256 Ill. 468."

We have examined the instructions in the instant case and are satisfied that the jury was fully instructed and that there was no error such as would justify a reversal.

The question now to be considered is whether the judgment as entered was excessive, and we find that there is evidence to the effect that the plaintiff who was 37 years of age and previously enjoyed good health, was thrown into a ditch from an automobile. The shock caused her to become profoundly unconscious, in which condition she remained for five or six days. When examined at the hospital shortly after the accident it was ascertained that her skull was fractured, presumably a basal fracture. She had a large lump over her eyes and another over the left side of her head; her teeth were broken. Her lungs were punctured, the air was coming through the pleura. The second rib on the right side was broken in two places, and a three and one-half inch segment dislocated upward. The third, fourth, and fifth ribs were broken in two places with some dislocation. The sixth and seventh ribs were broken. Her left humerus was broken, six inches below the shoulder, with a large fragment displaced. The ninth rib on the left side sustained a comminuted fracture. She had a cut, eight or nine inches long, large enough to contain the hand, in the left axilla, extending down to the lung and laying it open. The dorsal muscle was cut through. She had a cut four inches long near the vulva. She had deep cuts on both legs and on the left hand. She was blind and one arm was paralyzed at this time. She had bruises everywhere on her body and face. She was bleeding profusely from the back of the septum. Many stitches were taken to draw her wounds together. She was given artificial blood intravenously, her bones

were set, and she was given treatment. She could not be moved for the purpose of taking X-rays for four or five weeks. After five or six days she began gradually to regain consciousness. She was given heart stimulants daily. She was immobilized to allow her fractured bones to knit. During all this time she suffered severely, and opiates had to be administered.

After a time she was able to get up. She still had pains in her back and thorax, and severe headaches. She could not see with her left eye; the left side of her face was paralyzed so that she could not move it, and she was in this condition when she left the hospital on November 8 or 9, 12 weeks after the accident.

At the time of the trial she was still under a doctor's care and was receiving electric treatments, massage, and internal medicine. Her left arm was paralyzed for six months or a year after the accident, and at the time of the trial it swelled so it could not be used. She was still unable to get up or down without assistance because her left knee would give way. The function of this knee was impaired by a floating semilunar cartilage. She was still deaf in the left ear, parts of the left side of her face were numb, and her mouth was still partially paralyzed, and she could not see anything on her left side. Her hospital bill was $620.80. Her nurse's bill was $490, and her doctors' bills amounted to $575.

We are of the opinion that the injuries sustained by the plaintiff justified the judgment entered by the court and that there is no such error as would justify a reversal of the case. The judgment is accordingly affirmed.

*Judgment affirmed.*

Friend and Wilson, JJ., concur.